IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | CRIMINAL CASE NO.: |
| ROBERT FOUNTAIN, | : | 1:22-CR-403-JPB-JSA |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Defendant was arrested without a warrant based on suspicions that he was engaged in sex trafficking of a minor. The officers obtained a cellphone during the search-incident-to-arrest as well as statements from Defendant. Defendant has filed a Motion to Suppress [61] the phone and the statements on the basis that the officers lacked probable cause to justify the arrest. After an evidentiary hearing and receipt of briefs, the Court **RECOMMENDS** that the Motion [46] be **DENIED**.

## I.    FACTS

Homeland Security Investigations ("HSI") Special Agent Tracy Le testified at the evidentiary hearing. Le explained that, in September 2022, a juvenile identified as E.W. went missing from a group home known for housing sexual abuse survivors lacking parents or guardians. Hearing Transcript [59] ("Tr.") at 12. A few weeks later, a private company tasked with running facial recognition

1

software to help locate missing and at-risk juveniles reported to local police that it found E.W.'s image in a commercial sex advertisement. *Id*. at 13. The police then obtained the IP address for the social media accounts used by E.W. and located her at her sister's house. *Id*.

E.W. was interviewed and explained that while she was missing she was with another juvenile (her friend J.W.) and the Defendant. The Defendant, who went by the nickname "Duke," created and posted online commercial sex advertisements featuring E.W. and J.W., transported the girls to various motels to have sex with customers, and managed the money paid by those customers. *Id*. at 13-15. E.W. provided a phone number for Defendant. *Id*.

Le reviewed a particular commercial sex advertisement dated September 29, 2022 and posted on MegaPersonals. *Id*. at 15-16. This document was entered into evidence at Government Ex. B. The document, which included nude photographs of the girls, stated:

> Ask about prices. In-calls and out-calls are available, no bare, no anal, no police. Hurry, we will not be here for long. Two girls are available. Text me for details. Text before you call.

*Id*. at 16; Ex. B. The phone number in the advertisement was the same one identified by E.W. as Defendant's. Tr. at 16.

Approximately one week later, E.W., who at that time was no longer with Defendant and J.W., happened to see another online advertisement featuring J.W.

2

*Id*. at 17-18. E.W. contacted her own Department of Family and Childrens Services ("DFCS") case worker who passed along the report to HSI. Le was assigned to investigate and, on October 20, 2022, he went to the Super 8 motel where J.C. was located in Decatur, Georgia. *Id*. at 17-20. Le knew that this motel was in a high-volume sex trafficking area. *Id*. Le was with two undercover Dekalb County detectives. *Id*. at 21.

Le had Defendant's driver's license photograph and photographs of J.C., and other information from E.W. describing Defendant and his car. *Id*. at 19-21. Based on this information, Le identified Defendant sitting in his car in the parking lot of the Super 8. *Id.* at 21-22. The undercover officers then also saw J.W. leave a motel room and walk down to Defendant's car. *Id*. at 22. The officers at that time detained, separated and tried to question Defendant and J.C., but J.C. denied that she was missing or had run away. *Id*. at 22-23. Le explained that it is not uncommon for juvenile sex trafficking victims to be uncooperative with police and to deny participation in prostitution or other wrongdoing. *Id*. at 23. J.C. was observed with a fresh tattoo that said "Loyalty," which according to Le was consistent with the sort of physical branding that traffickers often use to mark victims. *Id*. Defendant was not arrested that night although J.C. was taken to the hospital. *Id*. at 26.

A week later, on October 27, 2022, S/A Le went back to the Super 8 to inquire as to who had booked the hotel room that J.C. was seen leaving on October 20. *Id*. at 27. According to the motel's records, the individual who rented the room presented the Defendant's driver's license and credit card and provided the same telephone number that E.W. had identified as Defendant's number. *Id*. at 28. The room had been booked from October 18 through the 21st. *Id*. at 29. The motel manager, after viewing Defendant's picture, stated that Defendant regularly booked rooms at the motel and might also do so at a nearby motel, the Knights Inn. *Id*. at 29-30. Le went to the Knights Inn and spoke to the manager, who also recognized a photograph of Defendant based on his past visits. *Id*. at 30. Le asked the manager to call him if he saw Defendant again. *Id*.

Later that day, the Knights Inn manager called Le to say that Defendant had just arrived at the motel and checked into Room 114. *Id*. at 31, 37. HSI arrived to set up surveillance and Le began working on a search and arrest warrant application. *Id*. at 31-32, 37. Since the events of October 20, Le had also discovered as many as 81 commercial sex advertisements posted online with Defendant's phone number and with an email address rbrtfountain@gmail.com. *Id*. at 26. On October 27, Le checked for new advertisements and found one posted the previous day depicting J.C. and bearing Defendant's phone number. *Id*. at 32-34.

Le then contacted J.C.'s mother who stated that she (the mother) had not seen J.C. in several days and could not get in touch with her. *Id*. at 34-35.

Surveilling HSI agents then saw the Defendant and J.C. leave his car in the Knights Inn parking lot and enter the room. *Id*. at 35. The agents saw Defendant peek out of the room a few times, and Defendant and J.C. then leave the room together in the direction of the car. *Id*. at 36. The officers decided to approach and detain J.C. and arrest Defendant. *Id*. at 40-41. The officers (with guns drawn) ordered Defendant to his knees, handcuffed him, and conducted a safety frisk and patdown. *Id*. In the patdown they discovered and retrieved a pocket knife and a phone in Defendant's pockets. *Id*. The lock screen of the phone displayed the same email address that had been listed on commercial sex advertisements, that is, rbrtfountain@gmail.com. When agents dialed the number that they knew to be Defendant's number, the phone rang. *Id*. at 41.

Le had been actively working on an arrest and search warrant but had not completed that process as of when Defendant and J.C. left the motel room. Because they appeared possibly about to get into the car and drive away somewhere, the officers decided to immediately arrest Defendant without a warrant. The agents thereafter also questioned Defendant and recorded his statements. Id. at 43.

## II.    DISCUSSION

Defendant challenges the warrantless frisk and search of his pockets that resulted in recovery of the phone. Although the phone was not searched until the agents subsequently obtained a search warrant authorizing them to do so, Defendant argues (and the Government does not disagree) that the contents of the phone and the confession that he gave upon arrest must be suppressed if the initial seizure were unconstitutional. The Government argues that probable cause supported the arrest.

The Fourth Amendment to the United States Constitution requires that the government have a search warrant before it can search an individual's pockets or other premises, unless it can demonstrate by a preponderance of the evidence the application of one of the recognized exceptions to the Fourth Amendment warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (*citing Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). A search incident to a lawful arrest is one of those recognized exceptions. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Coolidge v. New Hampshire*, 403 U.S. 443, 471, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.); *Chimel v. California*, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Defendant does not argue that the search of his pockets exceeded the permissible scope of a valid search-incident-to-arrest. Defendant, rather, argues that the arrest was not permissible because the police lacked probable cause to believe that he was committing or had committed an offense.

A warrantless arrest is constitutionally valid only when there is probable cause to arrest. *See United States v. Watson*, 423 U.S. 411, 417 (1976); *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982). Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002) (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). In determining whether probable cause exists, the Court "'deal[s] with probabilities . . . [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (*quoting Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Moreover, an officer is not required to resolve all inferences and all factual conflicts in favor of the suspect. "An officer's decision to arrest a suspect may be

objectively reasonable even though that officer has not specifically discarded every possible non-criminal explanation for the conduct that forms the basis for her decision to arrest a suspect." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla*., 956 F.2d 1112, 1119 n.5 (11th Cir. 1992); *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523-24 (11th Cir. 1984).[1]

The Court easily finds that the officers had probable cause to arrest Defendant on October 27, 2022, and that his phone was therefore validly obtained in a search incident-to-arrest. The officers knew from previously interviewing E.W. and from obtaining commercial sex advertisements online that Defendant was transporting and advertising J.C. for commercial sex acts. They knew from E.W. that Defendant posted the ads, collected and managed the money received, and transported the girls. They knew from hotel records at the Super 8 and from the report from the manager at the Knights Inn that the Defendant was the one to rent the rooms. On October 27, Le discovered a commercial sex advertisement posted online the day before depicting J.C. and containing Defendant's phone number, and then learned that Defendant and J.C. were staying that day in a room in the Knights

---

[1] In this case, the officers discovered the phone in what S/A Le described as a protective patdown or frisk. The Government does not argue, however, even in the alternative, that the search falls under the related but separate Fourth Amendment exception for protective patdowns during investigatory detentions based on mere reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1 (1968). The Court therefore does not consider this issue and rather only considers whether the higher standard of probable cause was established.

Inn. Le also had discovered as many as 81 total commercial sex advertisements still available online with Defendant's phone number and an email address matching his name.

These facts supplied more than enough basis for the officers to conclude that Defendant was regularly engaged in commercial sex trafficking of minors and that he was likely in the midst of doing so with J.W. on October 27, 2022. The officers thus had the requisite basis to arrest him and conduct a search incident to that arrest.

Defendant argues that despite all the surveillance on October 20 and October 27, the officers never observed any supposed commercial sex customer entering or exiting any of the motel rooms or otherwise in any contact with Defendant or J.W. Defendant also argues that the officers learned relatively little additional information between October 20, when they chose not to arrest Defendant, and October 27, when they arrested him. If the officers lacked probable cause of October 20, Defendant argues, then they should also be deemed to lack probable cause on October 27 based on the same information.

Defendant's arguments are unavailing. That the officers did not literally catch Defendant and J.W. in the act of prostitution or in contact with a customer does not negate mere probable cause. It remains that the officers had witness reports expressly describing Defendant's trafficking of J.W. (from E.W.),

documentary evidence (including a commercial sex advertisement of J.W. with Defendant's phone number from just one day earlier), and surveillance observations showing Defendant transporting and bringing J.W. to a motel room that day. This was enough to suggest that Defendant had engaged in, and was even currently engaged in, sex trafficking with J.W.

That the officers chose not to arrest Defendant the previous week is irrelevant. Indeed, contrary to Defendant's argument, the officers had learned important new facts between October 20 and October 27. Le testified that he found as many as 81 commercial sex advertisements posted with Defendant's phone number, and specifically that an advertisement featuring J.C.'s image had been posted (also with Defendant's number) the very day before the arrest. But, even if no information had changed, it is of no evidentiary significance that the officers chose not to arrest based on some subset of or even all of the same facts on a prior date. The officers were entitled to decide, even if probable cause existed as early as October 20, that the case warranted further investigation, and/or that they could not continue to delay and risk J.W.'s well-being after finding her back with Defendant so quickly one week later.[2]

_____

[2] Defendant also criticizes Le's reference to having reached out to J.W.'s mother on October 27, and that J.W.'s mother reported having not seen or been able to reach J.W. in several days. Defendant points out that J.W. did not live with her mother and instead lived with her sister, and therefore argues that no significance should have attached to the mother's lack of contact with J.W. for a few days. This point is

For all of these reasons, the officers had a valid basis to arrest Defendant on October 27, 2022, and his Motion [46] should be denied.[3]

### III.   CONCLUSION

The Motion to Suppress [46] should be **DENIED**.

This matter is **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 22nd day of January, 2024.

**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**

---

immaterial. Regardless of where J.W. lived, Le was entitled to consider among the total mix of information that J.W.'s mother reported being unable to reach J.W. But, regardless, this relatively small fact was not necessary to probable cause.

[3] As noted above, Defendant specifically asks for the contents of the phone as well as the statements that he gave after arrest to be suppressed. The Defendant's only argument as to suppression of his statements is that those statements were fruits of the allegedly illegal search. In other words, Defendant offers no separate or additional grounds for suppression of the statements other than those discussed above. Because the Court finds those arguments to be meritless, no further discussion of the statements is necessary.

11